[Cite as *Bailey v. Wilson*, 2016-Ohio-3352.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

MELINDA D. BAILEY, et al.      :

     :     Appellate Case No. 2015-CA-19

    Plaintiffs-Appellants      :

     :     Trial Court Case No. 2012-CV-045

v.      :

     :     (Civil Appeal from

TYLER C. WILSON, et al.      :      Common Pleas Court)

     :

    Defendants-Appellees      :

     :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 10th day of June, 2016.

. . . . . . . . . . .

DARRELL L. HECKMAN, Atty. Reg. No. 0002389, 1 Monument Square, Suite 200, Urbana, Ohio 43078
    Attorney for Plaintiffs-Appellants

TODD J. MCKENNA, Atty. Reg. No. 0029270, 1900 Polaris Parkway, Suite 200B, Columbus, Ohio 43240

    Attorney for Defendants-Appellees

M. JASON FOUNDS, Atty. Reg. No. 0069468, 471 East Broad Street, 19th Floor, Columbus, Ohio 43215
    Attorney for Defendant-Appellee-State Farm Mutual Automobile Insurance Co.

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiffs-appellants Melinda D. Bailey and Gregory Bailey appeal from a verdict rendered against them in a tort action involving a motor vehicle accident. Defendants-appellees Tyler C. Wilson and State Farm Mutual Automobile Insurance assert that the verdict was consistent with the evidence presented. Bailey argues that the verdict is against the manifest weight of the evidence. We conclude that there is evidence in the record from which a reasonable jury could have concluded that Bailey suffered no injury as a result of the defendant's negligence. Accordingly, the judgment of the trial court is Affirmed.

## I. The Rear-End Collision and Subsequent Medical Care

{¶ 2} At the time of the accident, Melinda Bailey was 39 years old, and lived in Cable, Ohio, in Champaign County. She was driving a 2004 Kia Optima, traveling northwest on T.R. 151. Prior to the collision, Bailey was at a complete stop at the end of a line of other cars stopped behind a school bus. When Bailey saw Wilson's vehicle coming up behind her, she started moving her vehicle toward the side of the road to avoid hitting the car in front of her. It was estimated that Bailey was traveling at a rate of 5 miles per hour at the time of impact. At the time of the collision, Bailey was wearing her seat belt, and the air bag in Bailey's vehicle did not deploy.

{¶ 3} Wilson, a high school senior, was on his way home from school, traveling northwest on T.R. 151, driving a 1995 Honda Accord. As Wilson crested a hill, he saw the line of cars and immediately braked, but was unable to stop in time to avoid a collision. Wilson's vehicle rear ended the vehicle driven by Bailey, causing damage to both

vehicles. Wilson provided a statement to the police, in which he stated that before the accident his speed was 45 miles per hour. The speed limit on the road where the accident occurred was 55 mph. At the time of impact, the air bag in Wilson's car deployed. Neither Wilson nor his two passengers were injured in the collision.

{¶ 4} The police were called to the scene of the accident, and Bailey wrote on her witness statement that her left arm was sore. Bailey told the officer she did not want an EMS called. The officer testified that Bailey told him that her right arm was sore. Four days after the accident, Bailey visited her family primary care physician complaining of soreness in both knees, her right shoulder, hip, and chest from the accident. Pain medication was prescribed and she was told to call if it did not get better. Bailey returned to her primary care physician about two weeks later, complaining that her shoulder pain from the accident was still painful. She was then sent for an MRI of her shoulder. The MRI was conducted, and the report contained the following findings and conclusions:

FIINDINGS: The humeral head is well rounded and in good position. Marrow signal intensity is heterogeneous but normal. The glenoid labrum, and long head of the biceps tendon are intact. Subscapularis tendon is intact. There is moderate degenerative change in the AC joint with smooth hypertrophy which causes impingement. There is increased signal intensity within the rotator cuff tendon with a small full-thickness tear at the insertion anteriorly. There is a small amount of liquid in the subdeltoid bursa.

CONCLUSION: Degenerative changes in the AC joint with hypertrophy causing impingement. Rotator cuff tendinopathy with a full-thickness tear peripherally.

Exhibit 11 to Trial Transcript.

{¶ 5}   Bailey was referred to an orthopedist, who recommended surgery for a torn rotator cuff, with an estimated cost of $16,000.   At the time of the accident, Bailey was uninsured and could not afford the surgery. At the time of trial, Bailey had not yet had the rotator cuff surgery and was still experiencing shoulder pain. Bailey reported to her doctors that she had not experienced any shoulder problems before the car accident.

## II. The Course of Proceedings

{¶ 6}   Before trial, the parties entered into stipulations that included Wilson's admission of negligence, but not to proximate cause or damages. Dkt. #58. At trial, Bailey admitted that all past medical bills incurred in connection with the accident had been paid by insurance. Bailey was seeking compensation for future medical expenses, as well as economic and non-economic loss or damage for temporary and permanent pain and suffering, physical disability, mental distress, inconvenience and loss of enjoyment of life, physical comfort, well-being, and loss of consortium.

{¶ 7}   At trial, expert witnesses for both sides were presented by deposition. Dr. Stover, an orthopedist who examined Bailey and recommended surgery, gave his opinion that Bailey's rotator cuff injury was caused by the car accident. Dr. Stover acknowledged that the leading cause of rotator cuff tears was everyday wear and tear, not trauma.   Dr. Stover's opinion was based on the history provided by Bailey, which included no complaints of shoulder pain before the accident.   Dr. Stover also acknowledged that an acute collection of fluid near the tear can be an indication that an injury has been caused by trauma, as opposed to a degenerative condition, but Bailey's MRI did not reveal any

collection of fluid.

{¶ 8} Dr. Kumlar was called as a defense expert. He based his opinion on his review of Bailey's medical records, and his independent examination of Bailey. Dr. Kumlar did acknowledge that Bailey had a strain or sprain of her shoulders after the accident, but in his opinion, the rotator cuff problem was not caused or aggravated by the accident. Dr. Kumlar opined that Bailey's rotator cuff problem was consistent with aging or wear and tear, not with a specific injury. Based on the strain/sprain injury, Dr. Kumlar acknowledged that reasonable medical care included an emergency room examination and a follow-up visit to her primary care physician. Dr. Kumlar's examination revealed that Bailey's sprain or strain had resolved, that she had full range of motion and was not experiencing any significant symptoms. Based on his findings, Dr. Kumlar did not believe that Bailey needed any further medical treatment.

{¶ 9} Bailey and her husband both testified at trial, reporting that Bailey continues to experience pain in her shoulder from certain types of activities, but not chronic pain. On direct examination, Bailey testified that at the time of the accident she felt pain in both arms, that her arms felt noodle-like and really shaky, and that her shoulders hurt. On cross examination, Bailey acknowledged that she had stated in a pre-trial deposition that at the time of the accident she did not feel pain, but rather felt shaky in both arms, as if she had been carrying something heavy or awkward. She also stated that in the beginning after the accident, both of her arms were sore, but she did not realize she had a problem until the pain did not go away. She sought further medical treatment when the pain did not subside and she had trouble lifting her arm over her head. Both Bailey and her husband testified that before the accident Bailey had not experienced any problems with

her shoulders, or pain in her arms or shoulders.

{¶ 10}  Although Bailey was not seeking damages for past medical expenses, the parties entered a joint exhibit revealing medical expenses incurred in the total sum of $2559.54. Exhibits 3, 4 & 5.   In closing arguments, Bailey asked the jury to award her $65,101.01, representing the cost of future medical expenses, anticipated lost wages during rehabilitation after surgery, and compensation for past and future non-economic losses, including pain, suffering, mental distress and loss of quality of life.   A jury verdict in favor of Wilson was returned. Dkt. #102.   A jury interrogatory was completed, indicating that Wilson's negligence was not the proximate cause of any injury to Bailey. Dkt. #101.

{¶ 11}  An entry identifying the jury verdict in favor of the Defendant verified that the case was complete. From this entry of the trial court, Bailey appealed.   We issued a decision and entry remanding this case for the limited purpose of allowing the trial court to issue an amended judgment entry. A final appealable order was journalized and Bailey attached it to an amended notice of appeal.

### III. Standard of Review

{¶ 12}  A manifest-weight-of-the-evidence review requires the appellate court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created a manifest miscarriage of justice. *Folck v. Redman*, 2d Dist. Clark No. 2013-CA-35, 2013-Ohio-3646, ¶ 8. That "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the

finder of fact," was stressed by the Supreme Court of Ohio in *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517*,* as follows:

> [I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
>
>         \* \* \*
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.

*Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St. 3d 77, 80, 461 N.E.2d 1273 (1984).

### IV. The Verdict Is Not Against the Manifest Weight of the Evidence

{¶ 13}  As her sole assignment of error, Bailey asserts:

THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14}  Bailey argues that based on the agreement of the medical experts that some injury occurred as a result of the accident, the jury verdict, which failed to award any compensation for that injury, is against the manifest weight of the evidence.  We conclude that the issue of causation was disputed, and the jury reached a reasonable conclusion by accepting as more credible the evidence that Bailey was not injured in the accident.

{¶ 15}  In a personal injury action, "it is the plaintiff who bears the burden of proving to the jury, by a preponderance of the evidence, that the defendant's negligence was a direct or proximate cause of the plaintiff's injuries." *Welch v. Ameritech Credit Corp.*, 10th Dist. Franklin No. 04AP-1123, 2006-Ohio-2528, ¶ 47, citing *Gedra v. Dallmer Co.*, 153 Ohio St. 258, 91 N.E.2d 256 (1950). In a personal injury action, "much of the evidence presented at trial is of a subjective nature, and witness credibility takes on paramount importance." *Id.* at 47. "The jury, as the trier of fact, is responsible for determining the credibility of a witness and may believe all, part, or none of a witness' testimony, giving a witness little or no weight at all." *Id.* at ¶ 43.  In the case before us, the jury's verdict reflects its conclusion, based on the disputed evidence, that the collision was not the direct or proximate cause of the injuries for which Bailey was seeking compensation. Although Bailey's expert witness provided his opinion that her rotator cuff tear was caused by the accident, the defense expert provided his opinion that it was caused by wear and tear, a degenerative condition. In view of this conflicting testimony, we decline to substitute our judgment for that of the jury with respect to its determination on causation.

{¶ 16}  Bailey cites several cases where a jury verdict has been overturned when negligence was undisputed, but the jury awarded no damages. We find each of these fact-sensitive cases to be distinguishable from the case before us. In *Lockwood v. Morgan*, 12th Dist. Butler No. CA90-05-092, 1991 WL 238245 (Nov. 12, 1991), the court concluded that the evidence clearly demonstrated that the tortfeasor's negligence was a proximate cause of appellant's injuries. In *Terveer v. Baschnagel*, 3 Ohio App.3d 312, 313, 445 N.E.2d 264 (10th Dist.1982), the court found a jury verdict to be against the

manifest weight of the evidence when it failed to award damages for pecuniary losses incurred by the parents as a direct result of the death of their child in a motor vehicle accident.

{¶ 17} In *Scibelli v. Pannunzio*, 7th Dist. Mahoning No. 02CA175, 2003-Ohio-3488, the court found that the record provided uncontroverted testimony that a dentist's negligence was the proximate cause of some injury to his patient, who was therefore entitled to some damages. *Id.* at ¶ 12. Similarly, in *Enter v. Fettman*, 5th Dist. Stark No. 2005CA00023, 2005-Ohio-5525, a jury verdict of zero damages was found to be against the manifest weight of the evidence when the tortfeasor conceded liability and agreed that the injured plaintiff did suffer some damage from the accident. In *Hook v. Brinker*, 2d Dist. Montgomery No. 21389, 2006-Ohio-5583, we reversed a jury verdict when the $500 award to a pedestrian hit by a car was insufficient to cover his emergency room expenses of $1951. In *Lovett v. Wenrich*, 2d Dist. Montgomery No. 19497, 2003-Ohio-4587, ¶ 19, we agreed that some damages should have been awarded, since there was no dispute that an injury occurred as a direct result of a collision. Unlike the case before us, the facts in *Lockwood, Terveer, Scibelli, Enter,* and *Lovett* were uncontroverted on the issue of causation.

{¶ 18} In an appeal involving a negligence action, *Zerkle v. Kendall*, 172 Ohio App.3d 468, 2007-Ohio-3432, 875 N.E.2d 652 (2d Dist.), we held that "[e]very violation of an ascertainable legal right is a legal injury and entitles the injured party to at least nominal damages, even when no actual loss of any kind occurred."  *Id.* at ¶ 22.  We agree that if the jury had found that Bailey was injured as a direct result of the accident, then some damages would be necessary. However, the record is sufficient, based on Bailey's

testimony and the opposing opinions of two medical experts, for the jury to reach a reasonable conclusion that she was not injured as a result of the collision. The jury was free to believe or disbelieve any or all of Bailey's testimony, which contained conflicting statements about whether she experienced pain at the time of the accident, including her admission that she had testified, in a pre-trial deposition, that she did not feel pain at the time of the accident. Even though the defense expert testified that it was reasonable for Bailey to seek a medical evaluation after the accident, it was his opinion that her shoulder problem was not caused by the accident. And Bailey had been compensated for the expense of the medical evaluation.

{¶ 19} Other decisions have upheld jury verdicts with no damage awards, when the facts support a conclusion that the injured party did not suffer an injury, or incur an uncompensated loss, as a direct and proximate result of the accident. For example, in *Butler v. Stevens*, 2d Dist. Montgomery No. 22822, 2009-Ohio-2775, we upheld a jury verdict that awarded no damages to one of two persons involved in a motor vehicle accident, when the cause of the injury was challenged and the jury could reasonably conclude that he had not been injured in the accident. *Id*. at ¶ 44. In *Haller v. Daily*, 2d Dist. Montgomery No. 19420, 2003-Ohio-1941, ¶ 17, we found that, based on the facts presented, the jury could reasonably conclude that although the injured plaintiff incurred medical expenses as the result of the defendant's tortious conduct, she did not incur sufficient pain and suffering as a direct and proximate result of the tortfeasor's negligence to warrant non-economic damages.

{¶ 20} The jury's verdict does not shock our sense of justice and fairness, nor is it irreconcilable with the evidence in the case. There is evidence from which the jury could

have concluded that Bailey's shoulder injury was not directly and proximately caused by the accident. The judgment is not against the manifest weight of the evidence. Accordingly, Bailey's sole assignment of error is overruled.

## IV. Conclusion

{¶ 21} The sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J., and WELBAUM, J., concur.

Copies mailed to:

Darrell L. Heckman
Todd J. McKenna
M. Jason Founds
Rick L. Laveer c/o American Family Insurance Co.
Hon. Nick A. Selvaggio